UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KATHRYN T. CRAIG and KOR ISLAND
PROVISIONS, LLC,

    Plaintiffs,

v.                                                  Case No:  2:17-cv-180-FtM-99CM

ROMAN KROPP, SHERRI KROPP,
and DYLAN KROPP,

    Defendants.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendants' Motions to Dismiss (Docs. 11, 14, 21) filed on April 14, 18, and 28, 2017, to which Plaintiffs responded (Docs. 24, 26, 31). For the reasons set forth below, the motions are denied.

## Background

On March 1, 2017, Plaintiffs Kathryn T. Craig (Craig) and KOR Island Provisions, LLC (KOR) filed an eight-count Complaint, alleging various state-law tort claims and damages stemming from a business venture gone bad between the parties. The case was removed to this Court on March 31, 2017, based on diversity jurisdiction. (Doc. 2). Defendants Roman and Sherri Kropp ("RKropp" and "SKropp") are husband and wife,

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

and Defendant Dylan Kropp ("DKropp") is their son (collectively, "Defendants"). Craig is the sole owner and manager of KOR. (*Id.* at ¶ 1).

The Complaint alleges the following which the Court accepts as true at the motion to dismiss stage: In 2010, Craig met and befriended Defendants. In 2011, Craig formed KOR, a high-end retail furniture and furnishings store in Sanibel Island, Florida. (Doc. 2, ¶ 10). In April 2011, KOR, through Craig, hired RKropp to assist with the opening and operation of the store. (*Id.* at ¶ 11). RKropp became a trusted friend to Craig and RKropp was provided access to the KOR operating account to assist with the store's operation. (*Id.* at ¶ 12). At some point, the retail store closed.

As the retail store was closing, RKropp suggested to Craig that they become engaged in a real estate business where RKropp would locate suitable properties for purchase, renovation and re-sale, on Craig's behalf. (Doc. 1, ¶ 13). As suggested by RKropp, KOR was maintained and utilized for the purpose of conducting the real estate business, and Craig provided RKropp with continued access to the KOR account and authority to conduct real estate deals on behalf of KOR. (*Id.* at ¶ 14). RKropp was provided generous bonuses for his efforts, and as additional compensation, Craig allowed the Kropp family to reside rent fee in one of the properties purportedly purchased for KOR, 661 Cardium Street, Sanibel Island ("661 Cardium"). (*Id.* at ¶ 15). Over this time, RKropp and SKropp became confidantes and very close friends of Craig, and Craig considered them to be like her own family. (*Id.* at ¶¶ 16, 17).

Craig, through KOR, purchased several investment properties in Costa Rica with RKropp's trusted assistance. (Doc. 1, ¶ 18). One such property was called "Villa Santosha." Craig determined to renovate the "Villa Santosha" property in Costa Rica so

that it could be used as a luxury rental, and hired RKropp as the project supervisor, responsible for choosing and hiring the builder, managing and overseeing the work, handling the finances, and maintaining the records and budget for the renovation. (*Id.* at ¶ 19). As the renovation progressed and large sums of money were transferred out of the KOR account by RKropp, Craig became increasingly frustrated as her requests for information and back-up documentation regarding the cost of the renovation project were ignored by RKropp. (*Id.* at ¶ 20).

In late 2016, Craig began looking into the various business and other transactions that she had entrusted to RKropp. At this time, she found that Defendants had grossly abused the trust she had reposed in them, including the following:[2]

> a. RKropp falsely represented to Wachovia, n/k/a Wells Fargo that he was an owner of KOR, and was thereby able to have the account statements diverted from Craig and sent to his address at 661 Cardium.
>
> b. RKropp falsely represented to Craig that he had purchased the property at 661 Cardium for KOR. Instead, RKropp had used KOR's funds to purchase the property for $325,000, but then wrongfully and willfully arranged to have it placed in his name.
>
> c. Several years later, while Craig believed the Kropp family was living rent free in KOR's property at 661 Cardium, RKropp sold the property for $473,000, without the knowledge or consent of Craig, and kept the funds for himself. When Craig learned of the theft and demanded return of the funds realized by RKropp, he returned only $320,000, thereby misappropriating $153,000.
>
> d. Without Craig's knowledge or consent, RKropp and SKropp wrongfully and willfully utilized the debit card on KOR's account to pay for their personal family living expenses, including without limitation: electricity both for 661 Cardium, and for the home they thereafter rented in Colorado, paypal, ebay, gas, family travel, substance abuse rehabilitation for RKropp, cable, telephone, trash service, sewer, Burberry, J Crew, Saks 5th Avenue, jewelry stores, hardware stores, pharmacies, hair salons, restaurants, and

---

[2] The Court sets forth the entirety of the allegations as they are important to the Court's consideration of the arguments made in the Motions to Dismiss.

itunes. As a result of these unauthorized and unlawful charges, RKropp and SKropp misappropriated in excess of $265,000.

e. Without Craig's knowledge or consent, SKropp wrongfully and willfully utilized KOR's account to pay the charges on three storage units in her name for a period of approximately four years, thereby misappropriating approximately $36,000.

f. Without Craig's knowledge or consent, RKropp wrongfully and willfully withdrew or transferred to his personal account(s) from KOR's account, a total amount exceeding $820,000.

g. Without Craig's knowledge or consent, DKropp wrongfully and willfully withdrew or transferred to his personal account(s), from KOR's account the sums of $9,000, and $7,000.

h. RKropp falsely represented to Craig he had purchased the first of the properties in Costa Rica (the "beachfront property") for KOR. However, RKropp misrepresented to the legal counsel in Costa Rica and all others involved in the transaction that he was the purchaser of the property. KOR's funds were used for the purchase of the beachfront property, but RKropp wrongfully and willfully arranged the transaction so that a corporation owned by RKropp and SKropp took title. Several years later, and before Craig discovered these fraudulent acts, RKropp transferred title of the beachfront property to Craig's son. The nature arid extent of the damages related to these wrongful acts have not yet been determined.

i. RKropp falsely represented to Craig that the purchase price of the beachfront property was $1,225,000, when the actual purchase price was $900,000. After Craig discovered the discrepancy, RKropp falsely advised Craig that the legal counselor in Costa Rica was holding the excess funds. These funds remain missing.

j. RKropp falsely represented to Craig that the purchase price of the third property purchased by him for KOR in Costa Rica was $160,000, when the actual purchase price was $88,800. The funds relating to this discrepancy remain missing.

k. RKropp represented to Craig that the renovation to the Villa Santosha property cost $400,000, but has failed and refused to provide Craig with a shred of documentation to justify any portion of these charges. Craig has received credible information that an entirely new luxury home could have been built in Costa Rica for the amount purportedly paid by RKropp on behalf of KOR Island for the renovation to the Santosha property.

> l. RKropp falsely represented to Craig that he had purchased a 2000 Mercedes Benz automobile in Costa Rica (license plate no. 450300) for KOR to be used in conjunction with the properties purchased by KOR. Instead, RKropp used KOR's funds to purchase the automobile for $25,000, but then wrongfully and purposefully arranged to have title placed in his name.
>
> m. RKropp falsely represented to Craig that he was managing the rental of Villa Santosha and another of the properties purchased on behalf of KOR, for KOR, that he had registered the properties with Vacation Rentals By Owner (VRBO) and Airbnb, and that all rental income was being deposited into KOR's account. Instead, RKropp wrongfully and willfully arranged for the rental income to be deposited into his personal account. When Craig learned of this act of malfeasance and demanded return of all rental income due KOR, RKropp returned only $15,000, without any proof or accounting of what was actually misappropriated by him. Craig reasonably believes a much greater sum was obtained by RKropp for the rental of these properties.
>
> n. Without Craig's knowledge or consent, RKropp wrongfully entered into an agreement with an internet access provider to permit an antenna to be placed on the roof of the Santosha property for the approximate amount of $400 per month, and arranged for all such proceeds to be paid into an account on which he had added his wife, SKropp, as a joint owner. SKropp thereafter utilized these funds solely for the benefit of her and RKropp.

(Doc. 1, ¶ 21). As a result of these activities, Plaintiffs allege the following claims against <u>all Defendants</u>: constructive fraud (Count 1), conversion (Count 2), unjust enrichment (Count 4), money had a received (Count 5), accounting (Count 6), and civil conspiracy (Count 7); the following claim against <u>RKropp and SKropp only</u>: breach of fiduciary duty (Count 3); and the following claims against <u>RKropp only</u>: actual fraud (Count 1) and money lent (Count 8). (Doc. 2). Defendants move to dismiss all claims in the Complaint except Count 8 for failure to state a claim because the Complaint fails to allege sufficient facts to establish each claim.

## **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his claims. *See id.* at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted). Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims. *See id.* Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *See id.* at 678-79. Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments. *See Twombly,* 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure provides parallel pleading requirements that also must be satisfied. Under this rule, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. See id. at 678-79. Mere naked assertions are also inadequate. See id.

## Discussion

### A. Count 1 – Actual and Constructive Fraud

Although labeled simply "Fraud", the allegations state claims for actual fraud against RKropp and constructive fraud against SKropp and DKropp, and alternatively against RKropp. (Doc. 2, ¶¶ 24-26). With regard to the constructive fraud allegations, Defendants argue that Count 1 should be dismissed because KOR has failed to allege that anything illegal, illicit, or wrongful occurred; has failed to allege that SKropp or DKropp owed it any sort of fiduciary duty; and because there are no allegations that SKropp or DKropp made any misrepresentations or concealed any information from KOR.

Constructive fraud, unlike actual fraud, does not require a showing of intent or of a misrepresentation or concealment and thus a claim for constructive fraud need only meet the liberal pleading requirements of Rule 8. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 958-59 (11th Cir.2009); see also Fed. R. Civ. P. 8. Under Florida law[3], constructive fraud occurs "when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." Levy v. Levy, 862 So. 2d 48, 53 (Fla. 3d DCA 2003). "Fiduciary relationships may be implied in law and such relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Courts have found a fiduciary relationship implied in law when confidence is reposed by one party and a trust accepted by the other.

---

[3] Florida's substantive law governs in this diversity case. LaTorre v. Connecticut Mut. Life Ins. Co., 38 F.3d 538, 540 (11th Cir. 1994).

7

To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party." *Brigham v. Brigham*, 11 So. 3d 374, 387 (Fla. 3d DCA 2009) (internal citations omitted). Fiduciary relationships are either expressly or impliedly created. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518-19 (Fla. 3d DCA 1994). When a fiduciary relationship has not been created by an express agreement, the question of whether the relationship exists generally depends "upon the specific facts and circumstances surrounding the relationship of the parties in a transaction in which they are involved." *Collins v. Countrywide Home Loans*, 680 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010) (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003)). Constructive fraud will not lie where the parties are dealing at arm's length because there is no duty imposed on either party to protect or benefit the other. *Taylor Woodrow Homes*, 850 So. 2d at 541.

Here, the Complaint does not plead that a fiduciary relationship has been created amongst the parties by an express agreement; rather, Plaintiffs assert that an implied fiduciary duty exists. The Court finds that Plaintiffs have alleged sufficient facts upon which a fiduciary relationship may be implied by law. Plaintiffs have plausibly alleged that Defendants wrongfully used and obtained funds from KOR for their benefit by taking advantage of the trust she placed in them with KOR funds and its business, differing from an arms-length business relationship. (Doc. 1, ¶ 23, incorporating the allegations of ¶¶ 1-21). And contrary to Defendants' argument, KOR plausibly alleges that Defendants unlawfully misappropriated funds from Plaintiffs without their consent or knowledge.

With regard to the actual fraud allegations against Defendant RKropp only, RKropp argues that that the Complaint fails to meet the exacting standards set forth in Federal Rule of Civil Procedure 9, as they are devoid of any reference to the time at which they false representations and omissions were made and KOR has failed to adequately allege where the fraudulent representations and omissions occurred.  To state a cause of action for fraud, a party must allege: (1) a false statement concerning a material fact, (2) the representor's knowledge that the representation is false, (3) an intention that the representation induce another to act on it, and (4) consequent injury by the party acting in reliance on the representation.  *Gutter v. Wunker*, 631 So. 2d 1117, 1118 (Fla. 4th DCA 1994).  Federal Rule of Civil Procedure, Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Rule 9(b) is satisfied by a complaint which sets forth: (1) precisely what statements or omissions were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).  The Complaint is essentially required to identify the "who, what, when, where, and how."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."  *Corsello v. Lincare, Inc.*, 28 F.3d 1008, 1012 (11th Cir. 2005).  Rule 9(b) does not abrogate the concept of notice pleading.  Rather, "[i]n a complaint subject to

Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006).

Defendant RKropp's response in opposition (Doc. 31) only addresses the constructive fraud claim, not the actual fraud claim. But upon review of the Complaint, the Court finds that Plaintiffs have properly alleged a claim for actual fraud against RKropp in compliance with Fed. R. Civ. P. 9. Throughout the sub-paragraphs of paragraph 21, Plaintiffs detail with particularity the transactions at issue, when they occurred, where, and their amounts to put RKropp on sufficient notice of the allegations against him at the pleading stage.

### B. Count 2 – Conversion

Count 2 alleges that all Defendants wrongfully converted to their own use and benefit the funds of KOR, and wrongfully deprived KOR of its property permanently, incorporating the detailed allegations of paragraph 21. (Doc. 2, ¶¶ 28-29). Only Defendants SKropp and DKropp move to dismiss Count 2, arguing that KOR has failed to allege any demand for payment was made upon them. Additionally, Defendants argue that KOR fails to allege a specific amount of money which was converted and fails to plausibly allege that their actions were "unauthorized." Plaintiffs respond that it has alleged a civil conspiracy among the Defendants to wrongfully and willfully convert funds to their own use without Plaintiffs' consent, and they have alleged that they demanded return of the funds by RKropp but that he did not return the entirety of the funds. (Doc. 2,

¶ 21(c), (m)). Therefore, Plaintiffs argue that additional demands for return would have been futile.

Under Florida law, the elements of conversion are: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, *2-3 (S.D. Fla. Apr. 16, 2012) (citing *Special Purpose v. Prime One*, 125 F. Supp. 2d 1093, 1099-1100 (S.D. Fla. 2000) (citing *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993))).

> The essence of conversion is the possession of property in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which may be, but is not always, shown by demand and refusal. Of course, there may be liability for conversion even when the property was obtained without a specific wrongful intent. *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) (stating that conversion "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action"). But ordinarily a cause of action for conversion will arise only after the person entitled to possession demands possession, thereby giving the person in possession actual notice of the rights of the person who is legally entitled to possession.

*Ernie Passeos, Inc. v. O'Halloran*, 855 So. 2d 106, 108-09 (Fla. 2d DCA 2003) (internal citations omitted). Demand and refusal are unnecessary where they would be futile. *Id.* at 109 (citing *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. 2d DCA 1986)). "The purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made." *Goodrich v. Malowney*, 157 So. 2d 829, 832 (Fla. 2d DCA 1963).

The Complaint does allege that once Craig learned of certain acts of malfeasance, she demanded return of the funds, whereby RKropp returned only a portion of the funds. ([Doc. 2](), ¶ 21(c), (m)). Plaintiffs have plausibly alleged that the parties conspired to wrongfully deprive Plaintiffs of their property and Plaintiffs have otherwise alleged that a demand was made of RKropp whereby the funds were not returned, demonstrating futility of any further requests. Defendants' remaining arguments for dismissal fail because Plaintiffs allege throughout the Complaint that the actions of Defendants were unauthorized and a specific amounts are alleged.

**C. Count 3 – Breach of Fiduciary Duty**

Count 3 asserts a claim for breach of fiduciary duties against RKropp and SKropp, but only SKropp moves to dismiss the claim. The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. *Minotty v. Baudo*, 42 So. 3d 824, 836 (Fla. 4th DCA 2010) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief for breach of fiduciary duty. *Brigham*, 11 So. 3d at 387.

As discussed above, the Court has found that Plaintiffs have alleged sufficient facts upon which a fiduciary relationship may be implied by law, yet SKropp argues that the Complaint fails to allege that KOR placed any trust in, or reliance on, her. A review of the Complaint belies this assertion. Plaintiffs allege that SKropp became a confidant and very close friend of Craig who trusted SKropp, whereafter SKropp wrongfully

misappropriated funds from Plaintiffs. (Doc. 1, ¶¶ 16, 17, 21, 34). Therefore, the request to dismiss Count 3 is denied.

### D. Count 4 – Unjust Enrichment

Count 4 is alleged against all Defendants, but only SKropp and DKropp move to dismiss the claim. In order to prevail under an unjust enrichment claim in Florida, Plaintiffs "must demonstrate facts, that if accepted as true, would establish: (1) that a benefit was conferred upon Defendants; (2) that Defendants either requested the benefit or voluntarily accepted it; and (3) that under the present circumstances, it would be inequitable for Defendants to retain the benefit without paying for it." *Eller Media Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 355 F. App'x 340, 341-42 (11th Cir. 2009) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 303 (Fla. 1st DCA 1999)).

SKropp and DKropp argue that the Complaint's allegations are conclusory and do not establish that Defendants' retention and use of the money violates good conscience. Here, the Complaint alleges that SKropp and DKropp obtained the benefit of the Plaintiffs' funds. Further, Plaintiffs allege that Defendants voluntarily accepted the money and it would be inequitable for SKropp and DKropp to retain this benefit. At this stage in the litigation, the Court finds that Plaintiffs have adequately pled a cause of action for unjust enrichment.

### E. Count 5 – Money Had and Received

Count 5 is alleged against all Defendants, and all Defendants move to dismiss this claim. Defendants argue the claim should be dismissed because it is redundant of the unjust enrichment claim, and equity does not require this Court to award damages.

Florida recognizes a cause of action for money had and received. Florida law recognizes the general rule that "an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (quoting *Central Bank & Trust Co. v. General Fin. Corp.*, 297 F.2d 126, 129 (5th Cir. 1961)); *see also 1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, *6 (M.D. Fla. Mar. 24, 2011). Notably, intent is not required and an action for money had and received can be had where money is paid by mistake of fact.

Here, the Court finds that Plaintiffs have plausibly alleged a claim for money had and received and Defendants have cited no binding authority for the proposition that unjust enrichment and money had and received may not be pled in the same Complaint. To the extent Plaintiffs are pleading unjust enrichment and money had and received in the alternative – as they allude to in their response briefs – the Court accepts this.

### F. Count 6 – Equitable Accounting

Count 6 is alleged against all Defendants for an equitable accounting of the funds, and all Defendants move to dismiss this claim. Defendants SKropp and DKropp allege that Plaintiffs failed to plead the existence of a fiduciary relationship or a complex transaction, and RKropp argues that Plaintiffs failed to demonstrate that any remedy at law is inadequate. "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990).

Here, as discussed above, the Court has found that the Complaint plausibly alleges a fiduciary relationship and Plaintiffs may plead an equitable cause of action in the alternative subject to evidentiary facts showing the inadequacy of a legal remedy.

**G. Count 7 – Civil Conspiracy**

Count 7 is alleged against all Defendants for civil conspiracy, and all Defendants move to dismiss this claim. Defendants argue the claim should be dismissed because KOR has failed to adequately allege any agreement between the Defendants to do tortious harm to KOR. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008) (citations omitted). "The basis for the conspiracy must be an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Kee*, 918 F.2d at 1541 (internal citation omitted); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1089 (11th Cir. 2004) ("The cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage.").

Here, the Court finds that Plaintiffs adequately state a claim for civil conspiracy based upon the underlying, various tort theories which the Court has determined are all viable and adequately pled at the motion to dismiss stage.

Accordingly, it is now

**ORDERED:**

(1) Defendant Sherri Kropp's Motion to Dismiss (Doc. 11) is **DENIED**.

(2) Defendant Dylan Kropp's Motion to Dismiss (Doc. 14) is **DENIED**.

(3) Defendant Roman Kropp's Motion to Dismiss (Doc. 21) is **DENIED**.

(4) Defendants shall file an Answer to the Complaint (Doc. 2) within **fourteen (14) days** of this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 9th day of June, 2017.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record